NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOY BARRY, : | |
| : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| UNITED STATES LIFE (a/k/a The United : States Life Insurance Company in the City : of New York,) An AIG Company : | Civil Action 2:09-cv-1790 (DMC)(JAD) |
| : | |
| Defendant : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by The United States Life Insurance Company of the City of New York ("Defendant") for summary judgment pursuant to Fed. R. Civ. P. 56, and for an order granting Defendant's counter-claim for rescission seeking a declaration that the certificate of insurance of which Joy Barry ("Plaintiff") is the beneficiary be declared void *ab initio*. For the reasons stated herein, Defendant's motion is **denied**.

I.  **BACKGROUND**

On or about December 26, 2006, Mr. John Barry filled out an application for a life insurance policy by answering questions on Defendant's application form, and attesting to the truthfulness of

his answers. Subsequently, Mr. Barry was issued a life insurance certificate by Defendant which became effective on January 15, 2007. Mr. Barry died one month later, on February 15, 2007.

Defendant contends that Mr. Barry knew or should have known at the time he filled out the application that he had a serious liver disease or disorder, and that he was required to disclose that on the application. Mr. Barry disclosed that he was being treated for hypertension, but did not mention that he had received abnormal blood test results in April, 2006, and that he had been advised by his physician that he should have an ultrasound examination of his liver and abdomen. Defendant contends that omitting, or failing to disclose that information, materially effected Defendant's decision to insure Mr. Barry, and its calculation of the risk that insuring him posed. Plaintiff contends that the question as asked on the application was subjective, and that it would only be false if Mr. Barry had actually known that he had a liver "disease" or "disorder." Plaintiff does not dispute the materiality of the information, or that Defendant relied on Mr. Barry's application when it decided to insure him, but Plaintiff contends that there is a material question of fact as to what Mr. Barry knew when he answered the questionnaire. Plaintiff points out that to prove either legal or equitable fraud on Mr. Barry's part, there must be a showing that he had an intent to defraud in completing the application. Defendant must be able to show that Mr. Barry knew of the liver disease that ultimately contributed to his death, and not just that he knew that his doctor may have suspected something which remained unspecified in Mr. Barry's records.

## II.   <u>LEGAL STANDARD</u>

"A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." <u>Gaston</u>

v. U.S. Postal Serv., 2009 U.S. App. LEXIS 5673 (3d Cir. 2009). However, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

"A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). "[T]he burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Cartrett, 477 U.S. 317, 325 (1986). "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c)." Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).

> When a motion for summary judgment is properly made and supported, [by contrast,] an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal citations omitted). Indeed, "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." See Schoch v. First Fid. Bancorp., 912 F.2d 654, 657 (3d Cir. 1990). Rule 56(e) permits "a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of

3

litigation continues.'" Id. (quoting Lujan v. National Wildlife Fed'n., 497 U.S. 871, 889 (1990)). "It is clear enough that unsworn statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are the unsupported allegations of the pleadings." Schoch, 912 F.2d at 657.

## III.   **DISCUSSION**

Precious few of the facts in this case are in dispute, but there is one crucial and material fact which cannot be determined from the moving papers, and on which the parties can not agree, and that involves what Mr. Barry actually knew about his health in December, 2006, and what he thought he was being asked about his health when he filled out Defendant's medical information questionnaire. While it is sadly clear, as Defendant notes, that Mr. Barry was, in December, 2006, already "a gravely ill man," (ECF Doc.22-3, Defendant's brief in support of motion for summary judgment, page 11), it is not at all clear that Mr. Barry knew that fact. If anything, the evidence that he failed to have the ultrasound test that his doctor had apparently recommended eight months earlier could indicate that he did not believe he had a disease or disorder. While Defendant's statement that Mr. Barry's blood test results from April, 2006 "evidenced abnormal liver function"(*Id*.) is undoubtedly correct as a statement of fact, there is nothing to suggest that Mr. Barry was told he had a liver disease or disorder, or that he understood the import of the test results. He continued to drink heavily, even up until the night before his admission to the hospital, and did not have the ultrasound that his doctor recommended. Based on that limited information, the Court is unable to draw an inference that he intentionally misrepresented or omitted known facts. While it is notable that the consultations Mr. Barry received in the hospital in February, 2007 from both a cardiologist and nephrologist indicate a "history" of pulmonary disease and coronary artery disease, there is nothing on which to understand

4

how those conclusions were drawn, nor what is meant by "history," nor what to make of the inconsistencies in these reports, as well as the fact that the information came from Plaintiff, and not from Mr. Barry himself. Most importantly, there is nothing in Dr. Moukdad's notes that stated that Mr. Barry had a liver disease or disorder, or that he was being treated for such, or that he had any other health concerns other than hypertension. There is no dispute that Dr. Moukdad was Mr. Barry's treating physician, and thus the lack of such findings in his records carries more weight than the reports of the specialists who had never treated or observed Mr. Barry before, and whose first and only exposure to him came at a point when he was already critically ill. By the time he was seen by these doctors, it would seem, he had already presented at the hospital with severe jaundice and shortness of breath, and may have already suffered a myocardial infarction. It is unclear whether the history they make reference to was recent, or of long standing, but either way, the fact that Dr. Moukdad had no notes suggesting obstructive pulmonary disorder, congestive heart failure or anything other than one abnormal blood test and a history of hypertension is instructive. Moreover, Defendant's contention that "Mr. Barry failed to disclose the treatment he was receiving from Dr. Moukdad with respect to his liver functioning" is simply false. He received no treatment for his abnormal blood test results, and in no way could the recommendation that he go for a diagnostic ultrasound be construed as treatment. Defendant's attempts to bolster the limited evidence with hyperbole is unavailing.

As both parties correctly note, the question of whether a misrepresentation is made to a subjective or an objective question on a medical history questionnaire has been an important part of the analysis in similar cases. Notably, both parties cite the same cases, but draw different conclusions. Defendant uses *Ledley v. William Penn Life Ins. Co.* 138 N.J. 627, 635-636, 651 A.2d 92, 96

(N.J.,1995), for example, to support the proposition that "innocent or unintentional misrepresentations support recission where the misrepresentation was in response to an objective question." Plaintiff correctly notes, however, that the facts of *Ledley* support the conclusion that the question being asked of Mr. Barry in this case was, in fact, subjective. Much as the question in the instant case, the decedent in *Ledley* was asked on his application whether "the insured suffered from a thyroid 'disorder.'" The Court concluded that "giving the insured the benefit of all favorable inferences, as we must, the insured could have believed that his enlarged thyroid, which functioned normally, was not a 'disorder.' So viewed, the insured merely provided a response that reflected his own belief about his thyroid condition." (*Id*. At 651). Similarly, Mr. Barry was asked if he had a "disease or disorder," not whether he had ever had an abnormal blood test. There is no evidence that Mr. Barry's physician had even concluded that Mr. Barry had a disease or disorder. He recommended follow-up, presumably for the purpose of making a diagnosis, not confirming one. If the doctor himself did not document whether  Mr. Barry had a disease or disorder, how could Mr. Barry have been expected to come to that conclusion? In another case relied on by both parties for conflicting interpretations, *Formosa v. Equitable Life Assur. Soc. of U. S.* 166 N.J.Super. 8, 15-16, 398 A.2d 1301, 1304 - 1305 (N.J.Super.A.D., 1979),  Plaintiff has the better of the argument. While *Formosa* points out that "an insurance policy may be declared invalid and ordered rescinded on the ground of equitable fraud, i. e., for a misrepresentation of a material fact even though innocently made," it goes on to state that "the rule is applied rather strictly to objective questions in an application for insurance, the answers to which must be within the applicant's knowledge, such as whether the applicant has been examined or treated by a physician. However, the rule does not apply to the same extent in dealing with subjective questions, such as what is the state of the applicant's health or whether the applicant has

or has had a specified disease or illness. With respect to subjective questions, our courts have held that such questions seek to probe the applicant's state of mind, and if a negative answer is a correct statement of his knowledge and belief it is not a misrepresentation, and thus does not constitute equitable fraud." (*Id.* at 1304, 1305). Defendant's contention that "although the question of whether or not he had an illness or disorder is considered subjective by *Ledley* and *Formosa*, there is sufficient evidence to show that Mr. Barry was aware of his medical history" (Def. Reply Brief, ECF Doc. 29, page 5) misstates the facts and confuses the law. Mr. Barry did not need to be told that his liver was functioning normally to meet the criteria for answering a subjective question as explained in *Ledley.* Defendants contention to the contrary is unavailing. The Court can not determine what was said to Mr. Barry, and what he understood between April and December, 2006, and to the extent that the Court makes inferences, they must be made in the light most favorable to Plaintiff. Without something more than a few scribbled notes that do not say what Defendant purports that they say, there is no basis to decide this case on a motion for summary judgment.

## IV.   **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is **denied.** An appropriate order follows this opinion.

__S/Dennis M. Cavanaugh_____
Dennis M. Cavanaugh, U.S.D.J.

Date:       May _13__, 2011
cc:         Counsel of Record
            The Honorable Joseph A. Dickson,  U.S.M.J.
            File